# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Lee Cook,<br><br>            Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>            Respondents. | No. CV-14-02395-PHX-NVW (JZB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE NEIL V. WAKE, UNITED STATES DISTRICT JUDGE:

Petitioner Donald Lee Cook has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.)

## I.  SUMMARY OF CONCLUSION

Petitioner's direct appeal concluded on September 4, 2012. Petitioner's post-conviction proceedings concluded on September 17, 2013. Petitioner's Habeas Petition was due on September 17, 2014, but was not filed until October 28, 2014. Petitioner asserts he was unaware of the deadline in this case. Because there are no grounds for equitable tolling, the Court concludes that Petitioner's claims are untimely. Therefore, the Court will recommend that the Petition be denied and dismissed with prejudice.

## II.  BACKGROUND

### a.  Summary of Investigation of Petitioner's Crimes

In January 2005, Phoenix Police Detective Jason Milburn was notified by the National Center for Missing & Exploited Children ("NCMEC") of a complaint from

Yahoo. (Doc. 17-1, 87–88.)[1]  Yahoo notified NCMEC that an account holder had uploaded child pornography, and forwarded NCEMC copies of the uploaded pictures. (*Id.*)  As a result of the information provided in response to a subpoena, Detective Milburn was able to determine that the images had been uploaded by a customer of Cox Communications ("Cox") on January 5, 2005. (*Id.*)  Detective Milburn then subpoenaed Cox for user information and for the IP address at that date and time and learned that "it was being leased to Cox customer Donald Cook." (*Id.*)  Cox also provided Detective Milburn with Petitioner's address in response to the subpoena. (*Id.* at 89.)  On January 27, 2005, Detective Milburn took the pornographic pictures sent by Yahoo and the NCMEC to a medical doctor to determine whether the victim was a child. (*Id.* at 90.)  After receiving the doctor's medical report that concluded the person in the picture was a child, Detective Milburn obtained a search warrant for Petitioner's residence. (*Id.*)

On February 9, 2005, Phoenix Police detectives and officers served the search warrant. (*Id.*)  Petitioner was not at his apartment during the search. (*Id.* at 94.)  Inside Petitioner's apartment, Detective Milburn came across "a picture [on the wall] of a young female that resembled the same young female in the pictures that were reported from Yahoo." (*Id.* at 91.)  The Detectives also found "numerous computer components, hard drives, hard disk drives, compact discs, DVD discs, VHS tapes," three computer towers, a laptop, a router, and a cable modem. (*Id.* at 149–51, 173.)  As part of this search, Detective John Guzman, the Phoenix Police Department's computer forensics' expert conducted a "preview examination" on one of the computer towers and several CD's and found more child pornography.  (*Id.* at 173–74.)  Among the newly-found child pornography were several photographs and videos of Petitioner engaging in sexual conduct with the same child victim. (*Id.* at 96–97, 108, 117–19.)

When Petitioner returned home that night, Detective Wilburn arrested him and read him his Miranda rights. (*Id.* at 95-96.)  Petitioner was then questioned by Detective

---

[1] For ease of reference, the Court's citations to page numbers throughout this Report and Recommendation refer to CM/ECF page numbers.

Wilburn about the pornography and the victim. (*Id.* at 96.) At one point during questioning, Detective Wilburn showed Petitioner a "cropped" version of the original child pornography photo sent from Yahoo, which only showed the face of the child. (*Id.*) Petitioner admitted that "he knew her," and that her name was "Jayme S." (*Id.* at 96–97.) Detective Milburn later tracked down Jayme and confirmed that she was the victim in the photos and videos. (*Id.* at 96–97, 108, 117–19.)

Detective Guzman subsequently conducted a full forensic examination of Petitioner's computers and equipment between March 14, 2005, and June 8, 2005. (*Id.* at 184–85.) After examining eight hard drives and 28 CD's, the Detective found child pornography on several of the hard drives and CD's. (*Id.* at 208.) In addition to the duplicate images of Jayme, Detective Guzman also found multiple copies of the child pornography pictures and videos on Petitioner's other hard drives and CD's. (*Id.* at 220–46.) The "preview examination" also resulted in the finding of "extensive data" in the computers and equipment with Petitioner's "name, pictures, various screen names that he used, [and] E-mails." (*Id.* at 246.) In total, Detective Guzman estimated that he found "thousands of artifacts [and] data," that he could "identify or attribute" to Petitioner. (*Id.*) Ultimately, the evidence found by Detective Guzman later formed the bases for the criminal counts charged against Petitioner in the second indictment.

A computer forensic analyst conducted a review of the evidence and determined Petitioner was the assailant in the videos engaging in sexual conduct with the child. (Doc. 17-2, at 7–29.)[2]

### b. Charges, Convictions, and Sentencing of Petitioner

Between February and August 2005, Petitioner was charged in Maricopa County Superior Court by three separate indictments stemming from the above facts. The first indictment alleged seven counts of sexual exploitation of a minor, class 2 felonies and dangerous crimes against children (CR 2005–032990). (Doc. 17-2, at 79–81.) The second indictment alleged one count of sexual exploitation of a minor (CR 2005–

---

[2] Based on his training and experience, the detective determined that the victim was "certainly under the age of 10, with [] no signs at all of sexual maturation."

- 3 -

104441). (*Id.* at 85–86.) On September 5, 2006, the trial court granted the State's motion to consolidate the first and second cases for trial (CR 2005–032990 & CR 2005–104441, respectively). (*Id.* at 92–94.) The third indictment alleged two counts of sexual conduct with a minor and molestation of a child, all class 2 felonies and dangerous crimes against children (CR 2005–033017). (*Id.* at 88–90.) The trial for the third indictment was set to follow the consolidated trial. (*Id.* at 92–94.)

In August 2006, and prior to both trials, Petitioner requested to represent himself. (Doc. 17-2, at 139.) The request was granted, and advisory counsel was also appointed. (*Id.*)

On February 20, 2008, at the first trial, the jury convicted Petitioner of all eight counts (in total from both cause numbers). (*Id.* at 98-99.)

On September 11, 2009, the trial court terminated Petitioner's self-representation due to delays in trial proceedings. The court "converted" advisory counsel to trial counsel. *State v. Cook*, No. 1 CA-CR 09-0801, 2011 WL 3211052, at *3 (Ariz. Ct. App. July 28, 2011).

A second trial began on September 17, 2009. (*Id.* at *3-4.) Petitioner was found guilty in the second trial (third indictment) (CR2005–033017) of two counts of sexual conduct with a minor. (Doc. 17-2, at 100.)[3]

On October 23, 2009, the trial court sentenced Petitioner for all three cases. The consolidated trial had eight counts of sexual exploitation of a minor. Petitioner was sentenced to the presumptive term of 17 years for each count, all to run consecutively. (Doc. 17-2, at 122–24.) As to the second trial, for two counts of sexual misconduct with a minor, Petitioner was sentenced to life without the possibility of parole until Petitioner served 35 years, to run consecutively to each other and consecutively to the sentences imposed from the first trial. (*Id.*)

Petitioner was provided with copies of a document titled, "Notice of Rights of Review After Conviction and Procedure," which explained his rights to a direct appeal

---

[3] The government previously dismissed the child molestation count. *Cook*, 2011 WL 3211052, at *1.

- 4 -

and to post-conviction relief in the consolidated matters. (*Id.* at 129–36.) Petitioner acknowledged receipt of the documents by his signature. (*Id.*)

### c. Petitioner's Direct Appeal and Remand for Resentencing

On October 11, 2011, the Arizona Court of Appeals vacated Petitioner's sentences from the first trial. (*Id.* at 138–44.) The court of appeals found that the trial court "erred in terminating [Petitioner's] self-representation before it sentenced him." (*Id.* at 139.) Because Petitioner represented himself during his first trial, the court of appeals affirmed those convictions. (*Id.*)[4]

On remand, the trial court again found that the presumptive sentences were "appropriate" for each of the crimes. (*Id.* at 155.) The presumptive term was 17 years for each offense, to run consecutively to each count and consecutively to the sentences imposed in the other criminal cause number. (*Id.* at 155–59.) Petitioner was again provided the form titled, "Notice of Rights of Review After Conviction and Procedure," which explained his rights to a direct appeal and to post-conviction relief in both matters. (*Id.* at 166–67.)

### d. Petitioner's Second Direct Appeal

On January 27, 2012, with new counsel, Petitioner appealed the resentencing from the first trial. (*Id.* at 169–75.) Petitioner's brief was filed in compliance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), with counsel stating he could find no arguable issues to raise on direct appeal. (*Id.*) Petitioner thereafter filed a *pro se* brief, alleging that his trial attorney violated various State rules of professional conduct by ignoring his requests for defense. (*Id.* at 177–79.) On July 31, 2012, the court of appeals affirmed Petitioner's sentences. (*Id.* at 185–89.)

### e. Petitioner's Post-Conviction Relief Proceedings

On December 14, 2011, while Petitioner's consolidated resentencing was pending,

---

[4] The order terminating self-representation also preceded Petitioner's second trial on the charges of sexual exploitation of a minor. Those convictions and sentences were also vacated in a separate opinion. *Cook*, 2011 WL 3211052, at *1. Petitioner was convicted of those charges in a subsequent trial, and resentenced to consecutive terms of lifetime imprisonment without the possibility of parole for 35 years. *State v. Cook*, No. 1 CA-CR 03-0054, 2013 WL 4734036, at *1-2 (Ariz. Ct. App. Sept. 3, 2013).

- 5 -

Petitioner filed a *pro se* PCR Notice. (*Id.* at 191–96.) The trial court appointed counsel for Petitioner and set filing deadlines for his petition. (Doc. 17-3, at 2–3.) On June 7, 2012, Petitioner's counsel filed a motion to dismiss the PCR without prejudice because Petitioner's direct appeal was still pending. (*Id.* at 5–6.) The trial court dismissed Petitioner's PCR petition. (*Id.* at 8.) On June 12, 2012, Petitioner filed a *pro se* "Motion to Reinstate/Continue Rule 32 Post Conviction Relief." (*Id.* at 10–13.) Two days later, he filed a "Motion for Extension of Rule 32 PCR Brief Deadline." (*Id.* at 15–17.) Based on Petitioner's motions, the trial court ruled that Petitioner had "the right to continue the Rule 32 proceeding," so the court granted Petitioner's motion, reinstated the PCR proceedings, and gave Petitioner's counsel additional time to file his PCR petition. (*Id.* at 19–20.) On September 17, 2012, the trial court appointed substitute counsel for Petitioner. (*Id.* at 21–23.)

On September 18, 2012, Petitioner filed a "Supplemental Rule 32 Petition in Propria Persona," raising 48 issues. (*Id.* at 25–42.) Because Petitioner was represented by counsel, the Court refused to "accept any pro se filings or communications from him," and noted that it could not "read the majority of the document." (*Id.* at 45.) As a result, the Court took "no action." (*Id.*) On November 26, 2012, Petitioner's counsel filed a Notice of Completion of PCR Review. (*Id.* at 47.) Counsel reported that she had "corresponded with petitioner, conferred with former trial counsel, relatives of Petitioner and reviewed all relevant transcripts, record and appellate memorandum decision," and found no "colorable issue to submit to the court pursuant to Rule 32." (*Id.*)

On December 24, 2012, Petitioner filed a *pro se* PCR petition with 69 issues. (*Id.* at 50–75.) On March 15, 2013, the State responded to the petition, arguing that most of the claims related to Petitioner's other criminal cause number (CR 2005–033017), which was still pending on direct appeal, and that the majority of the remaining claims were precluded under Rule 32. (*Id.* at 77–86.) On August 13, 2013, the trial court dismissed Petitioner's PCR petition. (*Id.* at 88–89.)

Petitioner had 30 days to file a petition for review to the Arizona Court of Appeals from the dismissal of his PCR petition. The petition was due on or before September 17,

- 6 -

2013,[5] however Petitioner did not file until October 16, 2013. (*Id.* at 91–93.) Petitioner attached his PCR petition as an exhibit. (*Id.* at 94–120.) Petitioner's petition for review included all three criminal cases, despite Petitioner's failure to file a PCR petition for his third criminal case (CR2005–104441). On October 28, 2013, the court of appeals dismissed the petition for review as untimely as it was "not filed within 30 days of the trial court's final decision." (*Id.* at 125.) The court noted that the "trial court may 'after being presented with proper evidence, allow a late filing,' if it finds that petitioner was not responsible for the untimely filing." (*Id.*) There is no record before the Court that Petitioner subsequently filed a petition or presented evidence to allow for a late filing.

### f. Petitioner's Federal Habeas Petition

On October 28, 2014, Petitioner filed the instant Habeas Petition, raising 47 grounds for relief.[6] (Doc. 1.) On December 9, 2014, this Court directed Respondents to answer the Petition. (Doc. 8.) On February 19, 2015, Respondents filed a Limited Answer to Petitioner's Petition. (Doc. 17.) On April 16, 2015, Petitioner filed a Reply. (Doc. 21.)

## III.   THE PETITION IS UNTIMELY.

The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for Habeas Corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2244.

### a. Time Calculation

The AEDPA imposes a one-year limitation period, which begins to run "from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §

---

[5] This Court assumes Petitioner is entitled to five additional days pursuant to Ariz. R. Crim. P. 1.3 (expanding time limits by five days after service by mail).

[6] The Petition does not contain Grounds 10, 35, 36, 48, and 49. (Doc 1.) On December 24, 2014, Petitioner filed a "Supplement" he asserts contains the "missing pages" to Petitioner's Petition. (Doc. 14.)

2244(d)(1)(A).

Here, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences on July 31, 2012. (Doc. 17-2, at 186.) Petitioner then had 35 days to file a petition for discretionary review with the Arizona Supreme Court. *See* Ariz. R. Crim. P. 31.19(a) ("Within 30 days after the Court of Appeals issues its decision, any party may file a petition for review with the clerk of the Supreme Court . . . ."); Ariz. R. Crim. P. 1.3 (expanding time limits by five days after service by mail); *State v. Rabun*, 162 Ariz. 261, 782 P.2d 737 (1989). Because Petitioner did not file a petition for review, the judgment became final on September 4, 2012. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 656 (2012) ("[W]ith respect to a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' under § 2244(d)(1)(A) when the time for seeking such review expires . . . .").

This Petition was due on September 4, 2013, absent statutory or equitable tolling.

### b. Statutory Tolling

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). In Arizona, post-conviction review is pending once a notice of post-conviction relief is filed. *See Isley v. Arizona Dep't of Corr.*, 383 F.3d 1054, 1056 (9th Cir. 2004). *See also* Ariz. R. Crim. P. 32.4(a) ("A proceeding is commenced by timely filing a notice of post-conviction relief with the court in which the conviction occurred.").

On December 14, 2011, while Petitioner's consolidated resentencing was pending, Petitioner filed a *pro se* PCR Notice. (Doc. 17-2, at 191–96.) On December 24, 2012, Petitioner filed a *pro se* PCR petition with 69 issues. (Doc. 17-3, at 50–75.) On August 13, 2013, the trial court dismissed the petition. (*Id.* at 88-89.) Petitioner had 35 days to file a timely petition for review in the Arizona Court of Appeals, or until September 17, 2013, but he failed to do so. (*Id.* at 125.) The one-year deadline to file a federal habeas will be tolled while "a properly filed application for State post-conviction . . . review . . .

- 8 -

is pending." 28 U.S.C. § 2244(d)(2). Petitioner is entitled to statutory tolling from September 4, 2012 (the date convictions became final) until September 17, 2013.

The statute of limitations was not tolled by Petitioner's October 16, 2013 "Appeal of Post-Conviction Relief." (Doc. 17-3, Ex. FF.) This filing was not a "properly filed" state action for post-conviction relief because it was untimely. *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) ("[W]e hold that time limits, no matter their form, are 'filing' conditions. Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)."). Once the AEDPA limitations period expires, a subsequently filed state post-conviction proceeding cannot restart the statute of limitations. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (holding that § 2244(d) "does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

Petitioner was required to file this Petition by September 17, 2014.

### c. Equitable Tolling

"A petitioner who seeks equitable tolling of AEDPA's 1–year filing deadline must show that (1) some 'extraordinary circumstance' prevented him from filing on time, and (2) he has diligently pursued his rights." *Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010)." *Luna v. Kernan*, 784 F.3d 640, 646 (9th Cir. 2015). The petitioner bears the burden of showing that equitable tolling should apply. *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005). Equitable tolling is only appropriate when external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely habeas action. *Chaffer v. Prosper*, 592 F.3d 1046, 1048–49 (9th Cir. 2010). Equitable tolling is to be rarely granted. *See, e.g.*, *Waldron– Ramsey v. Pacholke,* 556 F.3d 1008, 1011 (9th Cir. 2009). Petitioner must show that "the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time." *Porter v. Ollison,* 620 F.3d 952, 959 (9th Cir. 2010). "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Miranda v. Castro*,

292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *Marcello*, 212 F.3d at 1010).

Here, Petitioner asserts equitable tolling should be granted because he "was never informed of [his] constitutional right to habeas corpus and therefore was not informed of the requirement or deadlines until [he] was informed by the Honorable Neil V. Wake in an Order to a motion [he] had filed for petition for Rule 32 PCR."[7] (Doc. 1-1 at 7.) In his Reply, Petitioner asserts that (1) he "does not have access to these records at this time to confirm or deny these claims" (of untimeliness and procedural default), and (2) "it was beyond his control as Petitioner was never notified of his rights to a writ of habeas corpus . . . and therefore could not have knowledge of requirement and procedures and deadlines." (Doc. 21 at 1-2.)

Petitioner has not established that equitable tolling should apply in this case. In his Petition, Petitioner asserts he was not advised of the requirement of deadlines of a Habeas Petition. (Doc. 1-1 at 7.) In his Reply, he adds that he did not have "knowledge of requirement and procedures and deadlines." (Doc. 21 at 1-2.) A petitioner's *pro se* status, ignorance of the law, and lack of representation during the applicable filing period do not constitute circumstances justifying equitable tolling because such circumstances are not "extraordinary." *See Waldron–Ramsey*, 556 F.3d at 1013 n.4 ("a pro se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling"), cert. denied, 558 U.S. 897 (2009); *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."); *Johnson v. United States*, 544 U.S. 295, 311 (2005) ("[W]e have never accepted pro se representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness."). Petitioner is not entitled to equitable tolling on this ground.

Petitioner also asserts that he "does not have access to these records at this time to confirm or deny these claims" of untimeliness and procedural default. (Doc. 21 at 2.) Although Petitioner is not claiming a lack of access to his files during the one-year filing

---

[7] *See Cook v. State*, 14-CV-00560-NVW-LOA, at Doc. 8 (April 15, 2014).

- 10 -

1  period, the Court nonetheless considers this issue.  The Court is mindful that the grounds
2  for equitable tolling under § 2244(d) are highly fact-dependent and considered on a case-
3  by-case basis.  *See Holland v. Florida*, 560 U.S. 631 (2010); *Laws v. Lamarque*, 351 F.3d
4  919, 922 (9th Cir. 2003).  The information contained in this Petition was available to the
5  Petitioner in 2012 when he filed two *pro se* petitions.  (Doc. 17-2, at 177-83, Doc. 17-3,
6  at 25-43.)  Importantly, on October 16, 2013, Petitioner filed a *pro se* appeal, which
7  attached the 68 grounds for relief he previously filed in trial court.  (Doc. 17-3, at 91-
8  120.)[8]   That appeal was filed within the one-year deadline for filing this Petition.
9  Petitioner was certainly aware of the nature of his claims and was able to file a Petition.
10 *See Waldron–Ramsey*, 556 F.3d at 1014 (stating that petitioner "could have prepared a
11 basic form habeas petition and filed it to satisfy the AEDPA deadline."); *United States v.*
12 *Battles*, 362 F.3d 1195, 1198 (9th Cir. 2004) (even without access to his case file,
13 petitioner must "at least consult his own memory of the trial proceedings.").  The record
14 demonstrates Petitioner had sufficient memory and documents to file a "basic form
15 habeas petition" within the deadline.  Petitioner has not satisfied his burden of showing
16 that equitable tolling should apply on this ground.

17      The Petition is untimely because it was not filed within the deadline established by
18 28 U.S.C. § 2244(d)(1).  Absent equitable tolling or other exception, the Petition will be
19 dismissed with prejudice, regardless of the margin of untimeliness. *See United States v.*
20 *Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) (federal habeas petition submitted one day
21 late was properly dismissed as untimely under AEDPA, noting that a "missed" deadline
22 "is not grounds for equitable tolling"); *Hartz v. United States*, 419 Fed. Appx. 782, 783
23 (9th Cir. 2011) (unpublished) (affirming dismissal of federal habeas petition where
24 petitioner "simply missed the statute of limitations deadline by one day"); *Lookingbill v.*

---

[8] The record demonstrates Petitioner filed several *pro se* motions. On June 14, 2012, Petitioner filed a *pro se* supplemental appeal with the Arizona Court of Appeals. (Doc. 17-2, at 177-83.)  On September 18, 2012, Petitioner filed a *pro se* PCR petition alleging 48 grounds for relief. (Doc. 17-3, at 25-43.) On December 24, 2012, Petitioner filed a subsequent *pro se* PCR petition alleging 68 grounds for relief. (*Id.* at 50-75.) On October 16, 2013, Petitioner filed a *pro se* appeal re-alleging 68 grounds for relief. (*Id.* at 91-123.)

- 11 -

*Cockrell*, 293 F.3d 256, 265 (5th Cir. 2002) ("[w]e consistently have denied tolling even where the petition was only a few days late"); *United States v. Locke*, 471 U.S. 84, 100–01 (1985) ("If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline . . . A filing deadline cannot be complied with, substantially or otherwise, by filing late—even by one day.").

## IV. EVIDENTIARY HEARING

An evidentiary hearing is not warranted regarding Petitioner's claims, including equitable tolling, because the record is sufficiently developed to resolve this question. A habeas petitioner asserting equitable tolling "should receive an evidentiary hearing when he makes 'a good-faith allegation that would, if true, entitle him to equitable tolling.'" *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) (quoting *Laws v. Lamarque*, 351 F.3d 919, 919 (9th Cir. 2003). An evidentiary hearing is not mandatory. "Where the record is amply developed, and where it indicates that the petitioner's mental incompetence was not so severe as to cause the untimely filing of his habeas petition, a district court is not obligated to hold evidentiary hearings to further develop the factual record, notwithstanding a petitioner's allegations of mental incompetence." *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010). *See also*, *Gaston v. Palmer*, 417 F.3d 1030, 1035 (9th Cir. 2005) (affirming conclusion that "[b]ecause [Gaston] was capable of preparing and filing state court petitions [during the limitations period], it appears that he was capable of preparing and filing a [federal] petition during the [same time]").

## CONCLUSION

The record is sufficiently developed and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011). Based on the above analysis, the Court finds that Petitioner's claims are untimely. The Court will therefore recommend that the Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72.  Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation.  *See* Fed. R. Civ. P. 72.

Dated this 22nd day of October, 2015.

Honorable John Z. Boyle
United States Magistrate Judge